UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA M. KINNEY,

       Plaintiff,

v.                                        Case No. 1:04-CV-489

COMMISSIONER OF SOCIAL           Hon. Hugh W. Brenneman, Jr.
SECURITY,

       Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on July 29, 1956, completed high school and had additional vocational training in computer technology (AR 43, 62).[1] Plaintiff stated that she became disabled on August 14, 2000 (AR 43). Plaintiff had previous employment as a quality inspector in a factory and as a cashier (AR 57). Plaintiff identified her disabling condition as lower back pain arising from an April 1, 2000 automobile accident (AR 56). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on April 2, 2004 (AR 13-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 22). Second, the ALJ found that she suffered from severe impairments of spondylolisthesis and degenerative changes of the lumbar spine and depressive disorder (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23). The ALJ decided at the fourth step that plaintiff's impairments preclude her from:

> lifting or carrying over 10 pounds; prolonged walking; repetitive bending, twisting or turning; working around unprotected heights or dangerous moving machinery. The claimant requires a sit/stand option.

(AR 21). The ALJ further found that plaintiff's limitations stemming from her mental impairment consisted of: mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence or pace in completing tasks in a timely manner; and no documented episodes of decompensation in a work or work-like setting (AR 21). The ALJ concluded that "[a]s such, the claimant would have difficulty consistently carrying out complex or detailed instructions, and would be relegated to performing tasks of an unskilled variety. Accordingly, the claimant has the residual functional capacity for a range of unskilled sedentary work" (AR 21). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range of sedentary work (AR 23). Specifically, the ALJ found that an individual with plaintiff's limitations could perform 29,800 jobs in Michigan (assembler, order clerk, timekeeper, sorter, general office clerk and surveillance monitor) (AR 23). The ALJ also found plaintiff's allegations regarding her limitations were not totally credible (AR 21). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 23).

### III. ANALYSIS

Plaintiff raises two issues on appeal.

**A.   The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physicians.**

First, plaintiff contends that the ALJ discounted the opinions of treating physicians James Ranta, D.O., and Randal Palmitier, M.D., as unsupported by the record (AR 21). Plaintiff's Brief at 15-18. A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id.*, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinion of a treating physician is entitled to great weight, but must be supported by sufficient clinical findings and be consistent with the evidence. *See Melton v. Commissioner of Social Security*, No. 98-5671, 1999 WL 232700, *4 (6th Cir. April 12, 1999); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate "good reasons" for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

The ALJ properly discounted the opinions of plaintiff's treating physicians. As an initial matter, the ALJ was not bound by Dr. Ranta's February 13, 2004 sworn statement that plaintiff had been disabled and unable to work since her April 2000 automobile accident (AR 21, 458) and Dr. Palmitier's opinion that plaintiff had been disabled continuously since August 2000 (AR 21, 374). Although Drs. Ranta and Palmitier were treating physicians, the ALJ was not bound by their conclusions that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

The ALJ also pointed out that Dr. Ranta's conclusions regarding plaintiff's functional limitations were not supported by his own progress notes (AR 21). Dr. Ranta placed no restrictions on plaintiff during office visits on May 18 and June 30, 2000 (AR 322, 335). Dr. Ranta noted on July 31, 2000 that plaintiff was working with some restrictions, apparently by wearing a corset brace (AR 320). On January 22, 2001, Dr. Ranta restricted plaintiff to sedentary work, restricting her to "office type work" where posture changes are available, a ten pound lifting restriction, and restrictions on bending, lifting and twisting (AR 314). The January 22, 2001 restriction, which allowed plaintiff to perform a range of sedentary activities, is inconsistent with Dr. Ranta's subsequent sworn statement that plaintiff had suffered from work-preclusive impairments since April 2000 (AR 314, 458).

Dr. Ranta referred plaintiff to Dr. Palmitier (AR 58). After an examination on July 17, 2000, Dr. Palmitier recommended that plaintiff use a corset brace while at work and recommended no restrictions (AR 373). In August and September 2000, Dr. Palmitier took plaintiff off of work, "due to the long drive required to get to work and back home" (AR 365). In November 2000, Dr. Palmitier found that plaintiff exhibited symptom magnification of pain behaviors and secondary gain issues (AR 362). The doctor stated in boldface type "**(It should be noted that there is still litigation pending)**"(AR 362). The ALJ observed that, on a number of occasions, Dr. Palmitier found that plaintiff was able to work within the confines of a January 2001 functional capacity assessment, which concluded that plaintiff could perform physical work at the medium level for an 8-hour work day (AR 21, 241). For example, based on this assessment (which the doctor ordered), plaintiff could occasionally lift up to 28 pounds, frequently sit and stand, and occasionally, walk, crawl and climb a ladder (AR 241-42). In April 2001, Dr. Palmitier advised Dr. Ranta that the

7

functional capacities test adequately assessed her ability to work and should be used for permanent restrictions (AR 356-57).

Given these discrepancies, the ALJ gave minimal weight to the opinions of Drs. Ranta and Palmitier regarding plaintiff's inability to work since the auto accident in April 2000 (AR 21). The ALJ relied on the opinions expressed by the non-examining Disability Determination Service physicians and consultants, who concluded that plaintiff had severe impairments, but retained the capacity to perform a range of uncomplicated light work on a sustained basis (AR 19, 345-52, 381-98). An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence). Accordingly, the ALJ did not commit error in evaluating the opinions expressed by plaintiff's treating physicians.

        **B.**     **The ALJ did not follow an accurate hypothetical question to the vocational expert when he found that plaintiff could have performed work after August 14, 2000.**

Next, plaintiff contends that the ALJ incorrectly found that plaintiff could perform other work. Plaintiff's Brief at 18. Specifically, the vocational expert (VE) testified that plaintiff could not perform any work if the restrictions imposed by her physicians were accurate. *Id.* In this regard, plaintiff pointed out a sworn statement of Dr. Ranta, in which the doctor stated that "given her condition, [plaintiff would] miss more than a couple of days of work per month due to her pain

8

and her condition" (AR 488).  When asked if such a restriction would eliminate the identified jobs, the VE stated "Yes, sir" (AR 488).

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs.  *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments.  *Id.*   However, a hypothetical question need only include those limitations which the ALJ accepts as credible.  *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").  For the reasons stated above, the ALJ could properly give minimal weight to Dr. Ranta's opinion that plaintiff's restrictions would force her to be absent from work for a couple of days per month (AR 20-21). Accordingly, the ALJ was not required to include this restriction in the hypothetical question posed to the VE.

## IV.  CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the  vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform.

The Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g).  A judgment order consistent with this opinion shall be issued forthwith.


Dated:  September 6, 2005             /s/ Hugh W. Brenneman, Jr.
                                      Hugh W. Brenneman, Jr.
                                      United States Magistrate Judge